CHRISTIAN SCHEMPP, Appellant, v. JOHN B. DAVIS and ALTA DAVIS NICHOLSON, HENRY E. PERKINS, Intervenor, Respondents.

Kansas City Court of Appeals, April 7, 1919.

1. **ATTORNEYS' LIENS**: Attachments: Following Proceeds. An attorney who institutes and successfully prosecutes a cause of action for his client whereby he recovers land which had been taken away from her, has a lien not only on the cause of action, but also on the proceeds of that cause of action and his right thereto cannot be affected by an attachment thereon subsequent to the time his lien became complete.

2. **CAUSE OF ACTION**: Definition: Essential Elements. A cause of action has at least two essential elements: (1) the wrongful invasion of a right and (2) the privilege or power which law or equity gives to the injured person to seek and obtain redress.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burns*, Judge.

AFFIRMED.

*William Henry* and *C. H. Harrison* for appellant.

*F. B. Ellis* and *W. S. Herndon* for respondents.

TRIMBLE, J.—John B. Davis and Alta T. Davis were husband and wife, owning certain real estate in Clinton county, Missouri, as tenants by the entirety. She went to California, and in 1915 Davis brought suit in the Clinton Circuit Court to obtain a divorce, and also a suit to divest her of all interest in said real estate. Service was obtained by publication only; the wife made no appearance, and on October 2, 1915, judgments for divorce and divesting her of title were rendered without her knowledge or any personal notice to her.

On September 11, 1916, Henry E. Perkins, a lawyer in said county, was employed by Mrs. Davis, then named Nicholson, to set aside and vacate the judgment rendered against her and wherein she was divested of title. This employment was by written contract and she agreed to give the attorney one-half of what was recovered.

Thereafter, on the 2nd day of January, 1917, Perkins, as attorney for Mrs. Alta Davis Nicholson and under said contract, took such steps in the circuit court of Clinton county as resulted in the judgment divesting title being set aside and, thereafter, upon a trial of the suit to divest title, the petition to divest was dismissed and judgment rendered for defendant, Mrs. Alta Davis Nicholson. In other words, Perkins succeeded in recovering for, and restoring to, her a one-half interest in the property involved.

Thereafter, Perkins, in behalf of his client, brought partition proceedings wherein John B. Davis was made a party and also certain persons having an interest therein by virtue of prior incumbrances thereon, one of these being Christian Schempp who is the plaintiff in the case now before us.

Thereupon, Schempp brought an attachment suit on a note he held against John B. Davis and Alta Davis Nicholson and, at the January, 1918, term obtained a personal judgment against John B. Davis and a judg-ment *in rem* against the interest of Alta Davis Nichol-son in the real estate aforesaid. After judgment had been rendered in one of the partition suits (in which the real estate therein was ordered sold and the pro-ceeds divided after first paying costs and incum-brances), but before the sale of that property and be-fore the trial of the other partition suit which was pending, Schempp had an execution issued on his judg-ment against Davis and his former wife, and under said execution the interest of Alta D. Nicholson in all of the real estate was at the April, 1918, term sold to A. J. Althouse for $600 who then, in the absence of Perkins in France on military service, filed motions to dismiss the partition suits which was done.

Prior to this, however, and on February 4, 1918, during the January, 1918, term, Perkins had filed a petition in the attachment suit, claiming a lien on the real estate attached for his services in getting the title to the same revested in Alta D. Nicholson as herein-before stated, and asking that his lien be protected, and that, if said real estate was sold, one-half of the amount realized from Alta D. Nicholson's real estate be paid to him.

Plaintiff Schempp, at the April term, 1918, filed an answer to Perkin's petition which, in addition to a general denial of every allegation therein, alleged that "this is a suit in attachment of real estate and Inter-venor's petition cannot be allowed in this suit."

The case between Perkins and plaintiff Schempp came on for trial at the April term, the plaintiff making no attack upon the petition save by way of an objec-tion to the introduction of any evidence which was overruled. The evidence *pro* and *con* was heard, the matter taken under advisement by the court, and at the September term, 1918, the court rendered judgment in favor of Perkins and directed that one-half of the

proceeds of the sale of Alta D. Nicholson's interest in the said real estate (which as stated was $600), to-wit, the sum of $300 be paid over to said Perkins or his attorneys of record. From this order and judgment the plaintiff Schempp has appealed.

There is no dispute over the facts, the evidence consisting of record entries and stipulated admissions. And it will be observed that at the time plaintiff Schempp brought his suit and attached Alta D. Nicholson's interest in the real estate, Perkins had obtained a judgment for her setting aside the decree fraudulently obtained, and it is conceded that when this was done the law vested the title to one-half of said real estate in her. In other words, Perkins had performed his service under his attorney's contract and if entitled to an attorney's lien at all, his right to a lien was complete at the time and before Schempp had commenced his suit.

It is contended that section 964, Revised Statutes 1909, giving attorneys a lien, does not afford a lien for the services rendered by Perkins. What were those services? It was the institution and prosecution of an action to set aside the fraudulent decree wherein she had been divested of her real estate, and the legal effect of this was to revest the title in her. An action is "the legal and formal demand on one's right from another person or party, made and insisted on in a court of justice." Black's Law Dictionary, 27; or, as Justinian tersely put it, an action is "the rightful method of obtaining in court what is due to anyone." A "cause of action" is difficult of definition because the phrase has many different and delicate shades of meaning according to the circumstances in which it is used. But it can be safely said that it at least contains these two essential elements: (1). The wrongful invasion of a right and (2) the privilege or power which law or equity gives to the injured person to seek and obtain redress. Section 964 says that "from the commencement of an action" an "attorney *who appears*

*for a party* has a lien upon his client's cause of action . . . which attaches to a . . . decision or judgment in his favor *and the proceeds thereof in whosesoever hands they may come;* and cannot be affected by any settlement between the parties or after judgment.'' It seems clear to us that Perkins comes clearly within the purview of this section, since he instituted the proceeding, appeared in court for his client, and successfully prosecuted her cause of action whereby he recovered her land which had been taken away from her. And since the attachment rights of the plaintiff in this suit arose after Perkins' lien became complete, it is not seen how he could, by selling the land under execution, affect Perkins' right any more than the latter's client herself could do, and clearly, according to the express terms of the statute, she could not defeat the claim by any settlement with the other party either before or after judgment. The attorney's lien is not only on the cause of action—which includes both his client's right and the proceeding for redress —but also on the *proceeds* of that cause of action successfully enforced. In other words, the lien extends to the fruits of that successfully enforced cause of action.

The statute did not provide any method by which the lien could be enforced, but left it to the court to enforce it; and where the proceeds of the judgment are yet under the control of the court, it is the duty of the court to control them and give effect to such lien. [Young v. Renshaw, 102 Mo. App. 173, 184.] In support of what we have said on the subject of the attorney's lien, see, also, the following authorities: Young v. St. Louis Transit Co., 109 Mo. App. 235; Conkling v. Austin, 111 Mo. App. 292; Lawson v. Missouri, etc., Telephone Co., 178 Mo. App. 124; O'Connor v. St. Louis Transit Co., 198 Mo. 622; Wait v. Atchison, etc., R. Co., 204 Mo. 491. Perkins' written contract was for one-half of what was recovered and this gave him that part of the amount realized in property or money and not a mere interest in the judgment. [McCall v.

Atchley, 256 Mo. 39.] And he is not restricted by the statute to any particular remedy to enforce his lien. He may do this in several ways, and one of them is to follow the proceeds. [Curtis v. Metropolitan Street Ry., 118 Mo. App. 341.]

Section 964 having been copied from the New York statute, decisions of that State upon it are pursuasive upon the courts of our State; and, hence plaintiff cites several New York cases in support of his claim that Perkins has no lien. The cases cited are: White v. Sumner, 44 N. Y. Supp. 692; In re Robinson, 109 N. Y. Supp. 827, 85 N. E. 1115; and Morey v. Schuster, 145 N. Y. Supp. 258. Said cases are all inapplicable here. They merely hold that when an attorney only conducts a *defense* not involving a counterclaim, he has no lien. In those cases the clients of the attorneys claiming liens were not asserting a cause of action; they were merely defending against one asserted by the other party. In the case at bar, Mrs. Alta D. Nicholson had lost her property. It was gone from her as much so as if it had been personal property and had been forcibly taken from her and carried away. In hiring Perkins and in causing him to act, she was asserting a "cause of action" and the services of Perkins successfully enforced that cause of action and recovered the property. And this gave him a lien. [McLean v. Leech, 105 Tenn. 693; Noftzger v. Moffett, 63 Kan. 354.].

It is finally urged that Perkins could not come into the attachment case and protect his rights by asserting his claim to one-half of the proceeds. It would seem that the proper way to have raised this point, if there be any real substance in the contention, would have been by way of attack on Perkins' petition, either by way of motion to strike out, demurrer or otherwise. But if, on the face of the record, it appears that he is not entitled to any relief whatever, doubtless this point can be made at any time. However, since Perkins' lien was complete and Schempp's attachment was levied upon land to which Perkin's lien had already

attached, and, as under the attorney's lien statute, the attachment can "follow the proceeds" we see no reason why he could not follow them in this way. It is said that if Perkins ever had a lien upon the real estate, he still has it and could assert it against that in the hands of the purchaser at the execution sale. Perhaps he might, we do not need to say; but as the statute gives a lien upon the proceeds and allows him to follow it into "whosesoever hands they may come" we do not think plaintiff herein can compel him to do so.

The judgment is affirmed. All concur.